| | |
|---|---|
| 1<br>2<br>3<br>4<br>5 | MORGAN, LEWIS & BOCKIUS LLP<br>Carrie A. Gonell, Bar No. 257163<br>David J. Rashé, Bar No. 318400<br>600 Anton Boulevard, Suite 1800<br>Costa Mesa, CA  92626-7653<br>Tel:   +1.714.830.0600<br>Fax:  +1.714.830.0700<br>carrie.gonell@morganlewis.com<br>david.rashe@morganlewis.com |
| 6<br>7 | Attorneys for Defendants<br>RAISING CANE'S USA, L.L.C. and<br>RAISING CANE'S RESTAURANTS, L.L.C. |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAYA RODRIGUEZ, an individual and on behalf all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>RAISING CANE'S USA, L.L.C., a California limited liability company; RAISING CANE'S RESTAURANTS, L.L.C., a California limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-8296<br><br>Los Angeles County Superior Court, Case No. 22STCV27956<br><br>**DEFENDANTS RAISING CANE'S USA, L.L.C. AND RAISING CANE'S RESTAURANTS, L.L.C.'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>[28 U.S.C. §§ 1332, 1441, 1446, and 1453] |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 44415445

NOTICE OF REMOVAL

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT Defendants Raising Cane's USA, L.L.C. and Raising Cane's Restaurants, L.L.C. (collectively, "Defendants"), by and through their counsel, remove the above-entitled action to this Court from the Superior Court of the State of California, County of Los Angeles, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million. This removal is based on the grounds stated herein.

## I. PROCEDURAL BACKGROUND

1. On August 26, 2022, Plaintiff Caya Rodriguez ("Plaintiff") filed a putative class action complaint in the Superior Court of California, County of Los Angeles, entitled *Caya Rodriguez, an individual and on behalf of all others similarly situated v. Raising Cane's USA, L.L.C., a California limited liability company; Raising Cane's Restaurants, L.L.C., a California limited liability company; and DOES 1 through 100, inclusive*, Case No. 22STCV27956 (the "Complaint").

2. Plaintiff personally served copies of the Summons and the Complaint on Defendants' registered agent for service of process on October 12, 2022. True and correct copies of the Summons, Complaint, and all documents served with the Complaint on Raising Cane's USA, L.L.C. are attached as **Exhibit A**. True and correct copies of the Summons, Complaint, and all documents served with the Complaint on Raising Cane's Restaurants, L.L.C. are attached as **Exhibit B**.

3. The Complaint seeks damages, penalties, and injunctive relief on behalf of a putative class for: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting time penalties for failure to pay all wages due upon

termination; (6) failure to provide accurate wage statements; (7) failure to timely pay wages during employment; (8) failure to reimburse business expenses; and (9) unfair competition in violation of California's Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200, *et seq*. (Ex. A, Complaint ("Compl.") ¶¶ 31-94.)

4. Plaintiff alleges all causes of action individually and on behalf of a putative class defined as "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class (collectively referred to as 'Class Members')." (*Id.* ¶ 21.)

5. On November 14, 2022, Defendants filed their Answer to Plaintiff's Complaint. A true and correct copy of this Answer is attached as **Exhibit C**.

6. Other process, pleadings, and orders served upon or filed by Defendants in the Superior Court action are attached as **Exhibit D**.

7. Exhibits A, B, C, and D constitute all the pleadings, process, and orders served upon or by Defendants in the Superior Court action.

## II. REMOVAL IS TIMELY

8. This Notice of Removal is timely, pursuant to 28 U.S.C. sections 1446(b)(3) and 1453, because it is filed within 30 days of Plaintiff's service of the Summons and Complaint on Defendants. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining that the 30-day period for removal runs from the service of the summons and complaint). No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

///
///
///

## III. THE COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA

9. This lawsuit is a putative class action.[1] (Compl. ¶¶ 1, 21, Prayer for Relief, para. A.) Removal under the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. sections 1441, 1446, and 1453 because: (i) diversity of citizenship exists between at least one putative class member and both Defendants; (ii) the aggregate number of putative class members in the proposed class is 100 or greater; and (iii) the Complaint places in controversy more than $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(5)(b), 1453.[2] Although Defendants deny Plaintiff's factual allegations and deny that Plaintiff—or the class she purports to represent—are entitled to the relief requested in the Complaint, based on Plaintiff's allegations in the Complaint and Prayer of Relief, all requirements for jurisdiction under CAFA have been met in this case.

### A. Diversity of Citizenship Exists

10. To satisfy CAFA's diversity requirement, a removing party seeking removal must establish only that minimal diversity exists, that is, that one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)). Plaintiff is a citizen of California. Defendants are citizens of Louisiana and Texas. Thus, minimal diversity exists and removal is proper.

---

[1] Defendants deny, and reserve the right to contest at the appropriate time, that this action can properly proceed as a class action. Defendants further deny Plaintiff's claims and deny that she can recover any damages.

[2] Defendants deny Plaintiff's factual allegations and deny that Plaintiff and members of the putative class are entitled to any relief whatsoever.

### 1. Plaintiff is a Citizen of California

11. "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l,* 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Domicile is determined by "an individual's 1) residence in a state, and 2) his intent to remain indefinitely." *Boon*, 229 F. Supp. 2d at 1019. Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

12. Plaintiff alleges in the Complaint that she is a resident of California. (Compl. ¶ 2.) The Complaint does not allege any alternative place of residence or state of citizenship for Plaintiff, nor does the Complaint allege an intent by Plaintiff to move her residence outside of California. According to Defendant Raising Cane's USA, L.L.C.'s business records, Plaintiff's last known residence was located in Sanger, California. On information and belief, Plaintiff intends to remain in California. Accordingly, Plaintiff is a citizen of California for purposes of removal.

### 2. Defendants are Not Citizens of California

13. For purposes of establishing diversity jurisdiction, a corporation is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place business. 28 U.S.C. § 1332(c)(1). The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the

headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings. . . ." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

14. For CAFA diversity purposes, a limited liability company is deemed to be a citizen of the state where it is organized and the state where it has its principal place of business. 28 U.S.C. § 1332(d)(10); *see also Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 704 (4th Cir. 2010) (holding that a limited liability company qualifies as an "unincorporated association" under Section 1332(d)(10) for purposes of CAFA removal); *Jack v. Ring LLC*, 553 F. Supp. 3d 711, 715 (N.D. Cal. 2021) (concluding same); *Ramirez v. Carefusion Res., LLC*, 2019 WL 2897902, at *2 (S.D. Cal. July 5, 2019) (same).

15. Raising Cane's USA, L.L.C. is, and at all pertinent times was, organized under the laws of the State of Louisiana. *See* Defendants' Request for Judicial Notice ("RJN"), **Exhibit 1**. Raising Cane's USA, L.L.C.'s principal place of business and corporate headquarters are in Plano, Texas, where its managers and officers direct, control, and coordinate corporate activities. Raising Cane's USA, L.L.C. has no corporate offices in California now or at any time relevant to this action.

16. Raising Cane's Restaurants, L.L.C. is, and at all pertinent times was, organized under the laws of the State of Louisiana. *See* RJN, **Exhibit 2**. Raising Cane's Restaurants, L.L.C.'s principal place of business and corporate headquarters are in Plano, Texas, where its managers and officers direct, control, and coordinate corporate activities. Raising Cane's USA, L.L.C. has no corporate offices in California now or at any time relevant to this action.

17. Defendants are now, and were at the time of the filing of this action, citizens of Louisiana and Texas for purposes of determining diversity jurisdiction under CAFA. Therefore, diversity of citizenship exists under CAFA because at least one member of the putative class – Plaintiff – is a citizen of a state different

than Defendants. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

18. Additionally, although Plaintiff has listed 100 fictitiously-named "Doe" defendants, the citizenship of these "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(a); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (for removal purposes, the citizenship of defendants sued under fictitious names shall be disregarded).

### B. The Putative Class Has More Than 100 Members

19. CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more than 100 members. Plaintiff seeks to represent "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class (collectively referred to as 'Class Members')." (Compl. ¶ 21.) Based on Plaintiff's definition and according to Raising Cane's USA, L.L.C.'s business records, the putative class contains more than 9,500 non-exempt employees[3] who are working or have worked for Raising Cane's USA, L.L.C. in California between August 26, 2018 and November 1, 2022. Thus, the putative class contains more than 100 members.

///
///
///

---

[3] Raising Cane's USA, L.L.C.'s non-exempt employees are referred to as Crewmembers.

### C. The Amount In Controversy Exceeds $5,000,000[4]

20. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6).

21. A removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). The short and plain statement "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. It is beyond dispute that "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (internal citations omitted); *see also Dart Cherokee*, 574 U.S. at 84 (holding that a "statement 'short and plain' need not contain evidentiary submissions"); *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing district court's order remanding the action to state court due to an "inappropriate demand of certitude from [the defendant] over its assumptions used in calculating the amount in controversy" for purposes of CAFA removal).

22. The ultimate inquiry is what amount a complaint places "in controversy," not what a defendant may actually owe in damages. *LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citation omitted)

---

[4] This Notice of Removal addresses the nature and amount of damages that the Complaint places in controversy. Defendants refer to specific damages estimates and cite to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. Defendants maintain that Plaintiff's claims lack merit and that Defendants are not liable to Plaintiff or any putative class member in any amount whatsoever. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendants'] liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). In addition, Defendants deny that this case is suitable for class treatment.

(explaining that courts are directed "to first look to the complaint in determining the amount in controversy"); s*ee also Jauregui*, 28 F.4th at 993 ("At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy. This is also at a stage of the litigation before any of the disputes over key facts have been resolved.")  The burden to establish the jurisdictional amount under CAFA "is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state and prove the plaintiff's claims for damages.'" *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *see also LaCross*, 775 F.3d at 1203 (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy.").

23. The allegations in the removing defendant's notice of removal may rely on a chain of reasoning that includes assumptions and an assumption may be reasonable if it is founded on the allegations of the complaint. *McCollum v. TGI Friday's, Inc.*, 2022 WL 2663870, at *2 (C.D. Cal. July 11, 2022) (citing *Arias*, 936 F.3d at 925 (9th Cir. 2019)).  Moreover, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5 million either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief or declaratory relief)." Senate Judiciary Report, S. REP. 109-14, at 42.  As the United States Supreme Court has advised, "no antiremoval presumption attends case invoking CAFA" because Congress intended to "facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 87.

24. In assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc.*, 471 F. App'x. 646, 648 (9th Cir. March 8, 2012) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). When the complaint is "lacking in factual detail," a defendant seeking removal is particularly "justified in employing reasonable estimates" to establish the amount in controversy. *Ritenour v. Carrington Mortg. Servs., LLC*, 228 F. Supp. 3d 1025, 1029 (C.D. Cal. 2017); *see also Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (denying remand where defendant applied reasonable assumptions to complaint that had no fact-specific allegations because a plaintiff seeking to avoid removal "could have alleged facts specific to her claims which would narrow the scope of the putative class or damages sought").

25. While Defendants deny Plaintiff's factual allegations and deny that she or the putative class she seeks to represent are entitled to any of the relief for which Plaintiff has prayed, it is clear that, when the potential value of the claims of Plaintiff and the putative class members are aggregated, the allegations within the Complaint put into controversy an amount in excess of $5 million.

### 1. Plaintiff's Sixth Cause of Action for Failure to Provide Compliant Wage Statements Puts at Least $5,803,100 in Controversy

26. Plaintiff alleges that "Defendants failed to provide Plaintiff and Class Members accurate itemized wage statements pursuant to Labor Code sections 226, subdivision (a) and 226.2, subdivisions (a)(2)(A-B) ***on each and every wage statement that should have been provided***, including by failing to itemize and/or pay for all nonproductive time and rest and recovery time for each." (Compl. ¶ 71) (emphasis added.)

27. Plaintiff alleges that Defendants' failure to provide compliant wage statements to Plaintiff and Class Members was "knowing, intentional, and willful"

and that "Plaintiff and Class Members have suffered injury" as a result. (*Id.* ¶¶ 72-73.)

28. Labor Code section 226(e)(1) provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with [226] subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Plaintiff seeks the "full amount" of the penalties under Labor Code section 226(e) on behalf of herself and the Class Members. (Compl. ¶¶ 74-75; *see also* Prayer for Relief, para. F.)

29. Raising Cane's USA, L.L.C.'s review of data shows that approximately 9,500 Crewmembers (putative class members) worked an estimated 62,781 bi-weekly pay periods in California, for which Raising Cane's USA, L.L.C. issued a corresponding wage statement from the beginning of the applicable one-year limitations period on August 26, 2021, through the end of 2021. By assigning $50 to each of these Crewmembers for their first pay period during this time period and assigning $100 to each of these Crewmembers for each subsequent pay period during this time period (no Crewmember's individual penalty amount reached the $4,000 statutory cap under Labor Code section 226), Defendant calculates that Plaintiff's claim for wage statement penalties under Labor Code section 226(a) places in controversy at least **$5,803,100**.

**2. Plaintiff's Fifth Cause of Action for Failure to Pay Timely Pay Wages at Separation of Employment (Waiting Time Penalties) Puts at Least $5,208,000 in Controversy**

30. Plaintiff alleges that she "and Class Members sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of laws and regulations that have the force and effect of law and statutes as alleged herein." (*Id.* ¶ 27.)

31. Plaintiff alleges that this action includes questions of law and fact common to "Class Members" (as defined in the Complaint), including whether Defendants violated the California Labor Code by failing to pay Class Members for all hours worked at a proper overtime rate of pay, by failing to pay Class Members for all other time worked at a rate of pay that is greater than the applicable minimum wage, by not providing Class Members to take compliant meal and rest periods and thereafter failing to provide Class Members with "additional wages" for missed or interrupted meal periods and for missed rest periods, and by failing to pay Class Members all wages earned upon termination or resignation. (*Id.* ¶ 26.)

32. As a result of this alleged common course of conduct, Plaintiff contends that her claim seeking relief in the form of payment of waiting time penalties "is typical of the relief which would be sought by each Class Member in separate actions."[5] Thus, according to Plaintiff, each Class Member is due waiting time penalties that they could have sought in separate individual cases. (*Id.* ¶ 27.)

33. Plaintiff further alleges that Defendants "failed to pay Plaintiff and Class Members all wages earned prior to resignation or termination in accordance with Labor Code sections 201 or 202." (*Id.* ¶ 63.)

34. According to Plaintiff's allegations, Defendants' failure to timely pay all wages earned to Plaintiff and Class Members upon termination or resignation was "willful," "Plaintiff and Class Members are entitled to waiting time penalties from the date their earned and unpaid wages were due, upon termination or resignation, until paid, up to a maximum of thirty (30) days," and "Plaintiff and Class Members have suffered damages in an amount subject to proof, to the extent

---

[5] Plaintiff alleges that she and all Class Members whose employment with Defendants ended "were entitled upon termination to timely payment of all wages earned and unpaid prior to termination." (*Id.* ¶ 62.) Additionally, Plaintiff alleges that "[d]ischarged Class Members were entitled to payment of all wages earned and unpaid prior to discharge immediately upon termination" and "Class Members who resigned were entitled to payment of all wages earned and unpaid prior to resignation within 72 hours after giving notice of resignation or, if they gave 72 hours previous notice, they were entitled to payment of all wages earned and unpaid at the time of resignation." (*Id.*)

they were not paid for all wages earned prior to termination or resignation." (*Id.* ¶¶ 64-66.)

35. Plaintiff prays on behalf of herself and "Class Members" for an award of "[w]aiting time penalties under Labor Code sections (sic) 203." (Compl., Prayer for Relief, para. G.)

36. Plaintiff does not allege that any wages earned and owing, but unpaid to Class Members prior to termination or resignation, were ever paid to any Class Members at any time following the end of their alleged employment with Defendants. Plaintiff also does not allege that only *some* Class Members whose alleged employment with Defendants ended, whether by termination or resignation, were not paid all wages earned and owing prior to the end of their employment. In fact, Plaintiff alleges the opposite—that Plaintiff's claims and the relief sought are typical of "each" Class Member and that each person could have brought separate litigation to recover those waiting time penalties. (*See id.* ¶ 27.)

37. Based on Plaintiff's allegations, it is appropriate to use a 100% violation rate for waiting time penalties to calculate the amount in controversy. *See Ford v. CEC Entm't, Inc.*, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid."); *see also Jauregui*, 28 F.4th at 994 ("But it was not unreasonable for [defendant] to assume that the vast majority (if not all) of the alleged violations over the *four years* at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty.") (emphasis in original).

38. Labor Code section 203 provides that an employer who willfully fails to timely pay wages to an employee who is discharged or quits, must pay, as a penalty, the "wages of the employee . . . from the due date thereof . . . until paid or

until an action therefor is commenced; but the wages shall not continue for more than 30 days."

39. Raising Cane's USA, L.L.C.'s review of data shows that the employment of approximately 6,200 Crewmembers (putative class members) who worked for Raising Cane's USA, L.L.C. in California ended in 2021. Raising Cane's USA, L.L.C. employs Crewmembers on both full- and part-time bases, but Crewmembers are typically scheduled to work shifts of at least 4 hours in length. Conservatively using the applicable minimum wage during 2021 ($14.00 per hour)[6] and assuming formerly employed Crewmembers regularly worked just 2 hours per day, Defendant calculates that Plaintiff's claim for waiting time penalties under Labor Code section 203 places in controversy at least **$5,208,000** ($14.00 per hour x 2 hours per day x 30 days x 6,200 former Crewmembers).

### 3. The Amount in Controversy Exceeds $5 Million

40. Aggregating the figures above for just two of Plaintiff's nine causes of action establishes that the allegations in the Complaint put in controversy at least **$11,011,100** ($5,208,000 for the fifth cause of action + $5,803,100 for the sixth cause of action). Thus, the CAFA jurisdictional requirement of more than $5 million is satisfied based on these claims alone, even without assessing the value of Plaintiff's remaining causes of action or her request for attorneys' fees.

### 4. Plaintiff's Request for Attorneys' Fees Places Additional Amounts in Controversy, Further Exceeding the CAFA Threshold

41. Plaintiff seeks attorneys' fees on all claims. (Compl., Prayer for Relief, para. N.) Plaintiff specifically seeks attorneys' fees on her fifth cause of action pursuant to California Code of Civil Procedure section 1021.5. (*Id.* ¶ 67.) Plaintiff specifically seeks attorneys' fees on her sixth cause of action pursuant to California Labor Code section 226(e). (*Id.* ¶ 75.)

---

[6] https://www.dir.ca.gov/dlse/FAQ_MinimumWage.htm.

42. When an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that "if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy"); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund); *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014) ("[T]he Court finds that using [the 25%] benchmark is the most appropriate way to calculate attorneys' fees in order to establish the amount in controversy for jurisdictional purposes."). "A defendant does 'not need to prove to a legal certainty' that a plaintiff will be awarded the proffered attorneys' fees in the removal notice." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (quoting *Dart Cherokee*, 574 U.S. at 88).

43. Based on the above estimate of $11,011,100 in controversy on Plaintiff's fifth and sixth causes of action for failure to timely pay all wages due at separation and failure to provide compliant wage statements, the amount of attorneys' fees placed in controversy by Plaintiff's Complaint is at least **$2,752,775** (25% x $11,011,100).

44. Thus, the total amount placed in controversy by Plaintiff's Complaint is at least **$13,763,875** ($5,208,000 + $5,803,100 + $2,752,775).

### 5. Plaintiff's Other Causes of Action Put Additional Amounts in Controversy, Further Exceeding the CAFA Threshold

45. As shown above, using conservative and reasonable assumptions grounded in the allegations of the Complaint to calculate the amount in controversy, Defendants have demonstrated that Plaintiff's waiting time penalty claim and wage statement penalty claim, as well as their request for attorneys' fees, place well more than $5,000,000 in controversy. However, in addition to this amount, Plaintiff's

other causes of action place additional amounts in controversy, thus further exceeding the CAFA jurisdictional threshold. As enumerated in Section I, Plaintiff brings additional causes of action for class wide relief for various alleged Labor Code violations including the failure to pay overtime wages (first cause of action), failure to pay minimum wages (second cause of action), failure to provide meal periods (third cause of action), failure to provide rest periods (fourth cause of action), failure to timely pay wages during employment (seventh cause of action), failure to reimburse business expenses (eighth cause of action), and violation of the UCL for unfair competition (ninth cause of action). Each of these causes of action places additional amounts in controversy beyond Plaintiff's fifth and sixth causes of action as well as any request for attorneys' fees on these other causes of action.

## IV. VENUE

46. This action was originally filed in the Los Angeles County Superior Court. Initial venue is therefore proper in this district pursuant to 28 U.S.C. §§ 84(c), 1441(a), and 1446(a), and because it encompasses the county in which this action has been pending.

## V. NOTICE

47. Defendants will promptly serve this Notice of Removal on Plaintiff and will promptly file a copy of this Notice of Removal with the clerk of the state court in which this action is pending, as required under 28 U.S.C. § 1446(d).

## VI. CONCLUSION

48. Based on the foregoing, Defendants respectfully request that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Defendants respectfully request the opportunity to present a brief and oral argument in support of their position that this action is subject to removal.

| | | |
|---|---|---|
| 1 | Dated: November 14, 2022 | MORGAN, LEWIS & BOCKIUS LLP |
| 2 | | |
| 3 | | By: /s/Carrie A. Gonell |
| | | Carrie A. Gonell |
| 4 | | David J. Rashé |
| | | Attorneys for Defendants |
| 5 | | RAISING CANE'S USA, L.L.C. and RAISING CANE'S RESTAURANTS, L.L.C. |

# PROOF OF SERVICE

<u>Rodriguez v. Raising Cane's USA, L.L.C., et al.</u>
USDC Central District Of CA

I am a resident of the State of California, employed in the County of Orange; I am over the age of eighteen years and not a party to the within action; my business address is 600 Anton Blvd., Suite 1800, Costa Mesa, CA 92626.

On November 14, 2022, I served on the interested parties in this action the within document(s) entitled:

**DEFENDANTS RAISING CANE'S USA, L.L.C. AND RAISING CANE'S RESTAURANTS, L.L.C.'S NOTICE OF REMOVAL TO FEDERAL COURT**

[ X ]  **BY E-MAIL:** the parties listed below were served electronically, with the document(s) listed above by e-mailed PDF files on November 14, 2022. The transmission was reported as complete and without error. My electronic notification address is 600 Anton Blvd., Suite 1800, Costa Mesa, CA 92626. My e-mail address is patricia.martin@morganlewis.com.

[ X ]  **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Costa Mesa, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

| | |
|---|---|
| **BIBIYAN LAW GROUP, P.C.**<br>David Bibiyan, Esq.<br>Jeffrey D. Klein, Esq.<br>Alexander D. Wallin, Esq.<br>8484 Wilshire Blvd., Suite 500<br>Beverly Hills, CA  90211<br>Tel: 310.438.5555 / Fax: 310.300.1705 | *Attorneys for Plaintiffs CAYA RODRIGUEZ*<br>Email: david@tomorrowlaw.com<br>jeff@tomorrowlaw.com<br>alex@tomorrowlaw.com |

[ X ]  **STATE:** I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

[ X ]  **FEDERAL:** I declare that I am employed in the office of a member of the Bar of this Court at whose direction this service was made.

Executed on November 14, 2022, at Costa Mesa, California.

*Patricia Martin*
Patricia Martin